**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN T. ALLAN,

      *Plaintiff*,

*v.*                      CASE NO. 10-CV-11651

COMMISSIONER OF          DISTRICT JUDGE MARK A. GOLDSMITH
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

      *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.   **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   **REPORT**

### A.   **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

(DIB) benefits, and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 22, 23.)

Plaintiff was 36 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 11, 25, 100, 107.) Plaintiff's employment history includes work as a floor stripper, a pipe layer/laborer for an excavating company, lawn care and tire service. (Tr. at 118.) Plaintiff last worked in 1994. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on May 9, 2006, alleging that he became unable to work on August 15, 2005. (Tr. at 100, 104.) The claims were denied at the initial administrative stages. (Tr. at 72, 73.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, and obesity and other hyper-alimentation as possible bases of disability. (*Id.*) On June 18, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the application for benefits *de novo*. (Tr. at 8-19.) In a decision dated October 28, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on November 5, 2008. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 9, 2010, when, after the review of additional exhibits[2] (Tr. at 4, 153-231, 353-93), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On April 23, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq*., and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 15, 2005, the alleged onset date, and that Plaintiff met the insured status requirements through December 31, 2010. (Tr. at 13.) At step two, the ALJ found that Plaintiff's multilevel degenerative disc disease status post multiple laminectomy surgeries with radiculopathy and obesity were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 13-14.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 17.) At Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 14-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18-19.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for back pain since 2001. Plaintiff underwent three laminectomy surgeries between 2001 and 2002. (Tr. at 43, 351-52.)

On November 18, 2005, Rick E. Olson, M.D., noted that Plaintiff's back and bilateral leg pain was "the same" as the last visit and that the "severity of the symptoms have been moderate." (Tr. at 235.) Dr. Olson also noted that "[physical therapy] didn't really help the symptoms at all." (*Id.*) Plaintiff had been treated by Dr. Olson and had undergone physical therapy since September 2005. (Tr. at 236-41.)

A nerve and reflex study performed by Alexander Imas, M.D., on April 19, 2006, showed "[n]ormal right peroneal distal motor and superficial peroneal distal sensory conductions," "[n]ormal bilateral H-reflex latencies," and a "[n]ormal EMG of the right lower extremity and related paraspinals." (Tr. at 248-49.) Therefore, Dr. Imas concluded it was a "[n]ormal study." (*Id.*)

On March 26, 2007, a nerve and reflex study performed by Rommaan Ahmad, D.O., found that Plaintiff had "[p]rolonged bilateral H-reflexes, right slightly greater than left," "[n]ormal left sural sensory nerve conduction study," and "[d]enervation noted on needle EMG of right L5 paraspinals, with normal remainder of bilateral parspinals and right lower extremity." (Tr. at 284.)

On January 4, 2008, another nerve and reflex study performed by Dr. Ahmad concluded that "[f]indings suggest acute on chronic right L5 radiculopathy." (Tr. at 278.)

Plaintiff was referred to the Pain Management and Rehab Associates and Mark Rottenberg, M.D., performed lumbar epidural steroid injections under fluoroscopy on May 11 and 25, June 8, July 20, and December 26, 2006, on January 9, February 16, May 1, August 14, November 29, and December 14, 2007, and on February 29, March 11, April 22 and May 8, 2008. (Tr. at 243-44, 272-73, 275-76, 279-82, 286-88, 290-91.) Plaintiff was also given sacroiliac joint injections under biplanar fluoroscopy on March 23, 2007. (Tr. at 285.)

On July 8, 2006, Plaintiff was examined at the request of the Disability Determination Services ("DDS") by Jared Griffith, D.O. Plaintiff reported that he "occasionally uses a cane, although he did not bring one to the examination." (Tr. at 251.) Plaintiff also reported that he had back surgery in 1989, 1993 and 2001. (*Id.*) Dr. Griffith viewed an MRI report from September 21, 2005, which showed "postoperative changes at the L4-5 level" and "moderate circumferential disk bulging at L1-2 with a moderate-sized focal protrusion posteriorly on the left causing moderate anterior compression on the arachnoid sac with mild canal stenosis." (Tr. at 251.) Dr. Griffith also

noted "moderate disk protrusion at L2-3 with moderate canal stenosis as well as L3-4." (*Id.*) "L5-S1 was unremarkable." (*Id.*) At that time Plaintiff was 6 feet tall and weighed 277 pounds; it was noted that he "does not use an assistive device for ambulation." (Tr. at 252.) Dr. Griffith found during the physical exam of Plaintiff that there was "decreased range of motion and right paraspinal muscle spasm," "a positive straight leg raising on the right," "moderate difficulty with toe-walking, although . . . no difficulty with heel-walking," that Plaintiff was "able to get on and off the exam table without significant difficulty," had "muscle weakness within the right lower extremity to include the hip flexors at 3/5," and had "a right-sided limp," but was not using an "an assistive device." (Tr. at 253.)

An MRI taken on May 29, 2008, revealed:

Mild/moderate multi-level lumbosacral degenerative disc disease with superimposed post-operative changes, but no limiting central canal stenosis. It is suspected at mid lumbar spine that the pedicles are short with a developmentally narrow AP spinal canal diameter.

At L4-L5, where there has been a discectomy, no recurrent disc herniation, central canal or foraminal stenosis is noted. No free disc fragments. Mild residual neuroforaminal spurring.

At L5-S1, where presumably there has been no surgery, is a shallow, non-compressive subligamentous disc herniation or protrusion with an annular tear. No central canal or foraminal stenosis at L5-S1.

At L3-L4 is disc dessication without a disc herniation, central canal or foraminal stenosis. Mild central canal narrowing.

At L2-L3, where presumably there has been no surgery, is a left posterolateral and far lateral disc protrusion that could slightly affect the exiting left L2 nerve root. No limiting central canal stenosis. Mild, but no limiting, left neuroforaminal encroachment. There is moderate enhancement at the disc margin and correlation should be made to ensure there has been no surgery at this level, in which case an enhancing angular remnant with associated scar tissue is possible.

At L1-L2 is a shallow left posterolateral, non-compressive disc protrusion with associated spondylotic spurring.

At T12-L1 is an asymmetric left posterolateral and far lateral disc bulge or shallow protrusion.

No spondylodiscitis or arachnoiditis.

Mild central canal narrowing at L3-L4 and L2-L3 without limiting central canal stenosis at any level.

Facet arthrosis at multiple levels.

(Tr. at 349-50.)

The record also contains a sworn statement of Mark F. Rottenberg, M.D., taken on May 22, 2008. (Tr. at 292-329.) Dr. Rottenberg's curriculum vitae was attached as an exhibit to the statement. (Tr. at 330-47.) Dr. Rottenberg indicated that he had treated Plaintiff since March 29, 2006 (Tr. at 295), and summarized Plaintiff's physical problems as follows:

His primary physical problem relates to his lower back and lower extremities, and his impairment is that he has a failed low back syndrome, meaning that he's had multiple surgeries of the lower back, which have failed to correct problems which are residual and which are significant in the lower back, that includes problems with symptomatic disc pathology, where there's discs sticking out of place in his lower back, despite surgical attempts in the past and which would limit his sitting tolerance.

And further, he has problems with canal stenosis or narrowing of the room for the nerves traveling up and down the spine and the lower back that would further limit his standing tolerance.

And besides those problems, he also additionally has lower extremity pain complaints relative specifically to problems with some osteoarthritis involving his right hip, which would limit his standing tolerance. And also he has a significant problem with his right knee, which would include having some quadriceps insufficiency or weakness in the muscles that would help control pain related to his kneecap, which tends to laterally sublux or slide off to the side.

And in addition, he has in his right knee degenerative arthritic change involving primarily the medial compartment or wearing out of the shock absorbing cushion on the inside part of his right knee. And he also has what we call patellofemoral arthritis, which is grinding of the kneecap against the underlying bone. And he has what we call calcific tendinitis involving the quadricps muscle as it crosses the knee and attaches to the shin area.

Because of what we call weakness in the quadriceps muscle and the grinding of the kneecap against the underlying bone and the kneecap sliding off to the side, he would have limitation or impairment related to being unable to tolerate kneeling or squatting, and he would be expected to have problems negotiating stairs, with pain particularly going upstairs. And he would also have discomfort or pain when he went to change his position after prolonged sitting or getting up to arise after sitting. Because of the wearing out of the cartilage of the inside part of his knee, he also would be expected to have some limitation in standing, walking tolerance and also pain going down stairs.

And then besides all those things I mentioned, he also still has ongoing problems with primarily sensory nerve root involvement with a pinched nerve problem persisting in his lower back related to the disc pathology and lumbar stenosis. And he also has developed symptomatic degenerative changes involving his sacroiliac joints, where his pelvis and low back come together and where he's continuing to get wear and tear. And related to those problems, he would again have limitations relative to his ability with the sacroiliac problem to tolerate bending, twisting, lifting, pushing and pulling, and also would need to frequently adjust his position.

(Tr. at 295-98.) When asked to summarize the objective medical evidence supporting his

conclusion, Dr. Rottenberg responded:

Well, if we go back to his MRI or imaging study that was taken of his lower back prior to his initial visit here, as of September 21, 2005, there was an MRI that was done at Royal Oak Beaumont, that clearly shows multiple levels where the disc material or the shock absorbing cushions are sticking out of place, including problems with the small disc protrusion at T12-L1 just above the lower back. Disc protrusion at L1-2 and at L2-3 and at L3-4 in the lower back, and then considerable pathology or problems at the L4-5 level, where he's had multiple surgeries, where there's still despite all those surgeries, evidence on the last MRI of disc material protruding, and there's facet osteoarthritic changes or wear and tear arthritis, particularly at the L4-5 level.

In addition to those findings, above the level where he had all the surgeries at L4-5, is what we call lumbar stenosis or narrowing of the central canal where the nerves run up and down and that's throughout the lumbar spine above where he had the surgeries at L4-5.

Obviously, besides having imaging problems on his MRI, his regular plain films or x-rays show problems with his lower back with degenerative disc problems, arthritic changes . . . [and] canal narrowing . . . that would limit somebody's ability to tolerate being in an upright position or standing, as well as making him uncomfortable and have problems tolerating lying down.

11

> In terms of objective evidence . . . I've already alluded to the fact he had abnormal x-rays of his hip and his knee. He also, besides those problems identified on the imaging studies, has had electrical testing abnormalities substantiating the fact that he has nerve root involvement or radicular problems from a pinched nerve in the lower back associated with his problems.

(Tr. at 300-01.) Dr. Rottenberg further noted that the only "normal EMG study [Plaintiff] had since he's been under [Dr. Rottenberg's] care was just the first one that was ever done around April 20, 2006." (Tr. at 302.) Dr. Rottenberg opined that this reveals that Plaintiff "has had worsening of his condition with regards to the lower back and more pronounced pinched nerve problems in the lower back." (*Id.*) Dr. Rottenberg clarified that there is no such thing as a false negative in an EMG, the EMG is either positive or negative. (Tr. at 303.)

Plaintiff's counsel acknowledged that the MRI referred to was three years old, then he asked Dr. Rottenberg what an MRI taken today would "likely show" and the doctor opined that it "would show some worsening of the disc pathology and likely would show some progression of the narrowing of the lumbar canal stenosis." (Tr. at 304.) Dr. Rottenberg stated that even though there is no surgical procedure that could help Plaintiff, that does not mean that the problem is not severe. (Tr. at 312.) Dr. Rottenberg also indicated that the injections given Plaintiff produce relief from pain for between three and six months. (Tr. at 319-20.) Dr. Rottenberg then indicated that the injections "never eliminate the pain . . . [and] there's no work activity that [the doctor] can envision that would allow [Plaintiff] to be able to take narcotic pain medication that affects his level of alertness . . . ." (Tr. at 320-21.) Finally, Dr. Rottenberg found Plaintiff's pain to be severe and his symptoms credible and consistent with his medical findings. (Tr. at 323.)

Dr. Rottenberg indicated that at the time of his statement he had prescribed several medications for Plaintiff, including Oxycontin and Ativan. (Tr. at 324.) When asked whether "these medications provided any more relief than the other, the injections and the other

treatments," Dr. Rottenberg responded, "No." (Tr. at 324.) Dr. Rottenberg further opined that Plaintiff would not be able to work in even a sedentary job because Plaintiff would only be able to tolerate up to two hours of standing or walking, up to four hours of sitting, and the other two hours he would need to lie down. (Tr. at 325, 326-27.) Dr. Rottenberg added that Plaintiff should "avoid lifting or carrying anything in excess of 15 pounds." (Tr. at 327.)

A Physical Residual Functional Capacity (RFC) Assessment concluded that Plaintiff was able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, was unlimited in his ability to push or pull. (Tr. at 255.) Although it was noted that Plaintiff's symptoms are "aggravated by repetitive bending, prolonged sitting, standing and walking . . . [and that he] has leg weakness [and] numbness," the assessment noted that he is "not in acute distress [and that] he has a normal posture and normal gait." (Tr. at 256.) The assessment concluded that Plaintiff was occasionally limited in the ability to balance, stoop, and crouch, and frequently limited in the ability to climb, kneel and crawl. (Tr. at 256.) Plaintiff was found to be free of any manipulative, visual, communicative, or environmental limitations. (Tr. at 257-58.) The assessment found Plaintiff to be "partially credible." (Tr. at 259.) There was no treating source opinion for comparison. (Tr. at 260.)

In Plaintiff's Daily Function Report, he stated, "I get up in the morning, take my son to school (about 3 miles), return home, lay on couch until 3:00, pick son up from school, lay on couch or bed until bed time (sometimes do a load of dishes)." (Tr. at 125.) He testified that he is "slow to dress," that it is "painful to bend or twist," and that is it "sometimes hard to sit down and get up from toilet." (Tr. at 126.) Plaintiff indicated that he has no problem caring for his hair, shaving, or feeding himself. (*Id.*) Plaintiff also stated that he is able to prepare his own meals daily and do

13

dishes. (Tr. at 127.) He is able to drive a car, ride in a car, go outside twice a day, and handle his own finances. (Tr. at 128.) He is also able to read, watch television, and visit with others. (Tr. at 129.) Plaintiff estimated that he can lift 8 pounds, stand for 1-1 ½ hours, walk short distances, and sit for 1 hour at a time. (Tr. at 130.) Plaintiff indicated that he uses a cane when walking. (Tr. at 131.)

At the administrative hearing held on June 18, 2008, Plaintiff testified that he had lost about 30 pounds and now weighed around 254 pounds and that he is five feet and eleven inches tall. (Tr. at 31.) Plaintiff brought a cane to the hearing and when the ALJ asked him about it he indicated that it had not been prescribed. (Tr. at 41.) Plaintiff also stated that he cannot walk without his cane. (Tr. at 55.)

When asked whether he obtained any relief from the injections, Plaintiff stated, "sometimes . . . [but] sometimes they have no effect." (Tr. at 43.) Plaintiff indicated the injections work "[m]aybe 20 percent" of the time and that, when they work, they only work for "[m]aybe a week at the most." (Tr. at 52.) He further stated that when the pain returns after the injections it is "[s]ometimes more severe." (*Id.*)

Plaintiff testified that he has "constant pain" whether standing or sitting and that he "never find[s] comfort or ease." (Tr. at 48.) Plaintiff indicated that he did not believe that he could alternatively sit or stand for an eight-hour day without being able to lie down. (Tr. at 54.)

The Vocational Expert ("VE") was asked to assume a person of Plaintiff's background with the residual functional capacity to perform light work with the restriction of only "occasional climbing, balancing, stooping, kneeling, crouching and crawling." (Tr. at 64.) The VE indicated that such a person could not perform Plaintiff's past relevant work but could perform light occupations that have a "sit/stand option" and are "performed in a seated position." (Tr. at 65.)

14

The VE indicated that there are 60,000 jobs such as visual inspection and sorting, hand packaging, and hand assembly, in the state with one-half of them being in Southeastern Michigan. (Tr. at 65.) These jobs would not require climbing, bending or stooping. (*Id.*) Adding a sit/stand option would decrease the number of jobs available to around 30,000 in the state with one-half of them in Southeastern Michigan. (Tr. at 66.) If the same restrictions applied but the person could only work at the sedentary level, the number of jobs available would decrease to 10,000 in the state with one-half of them being in Southeastern Michigan. (Tr. at 67.) The VE further testified that if a person needed "at least at [sic] two hours of that eight-hour day to lay down," such a person could not retain full-time competitive employment. (Tr. at 69-70.) The VE indicated that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 59, 63, 69.)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 14-17.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

15

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2.      Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 15.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ "failed to comply with controlling Sixth Circuit caselaw in essentially rejecting the uncontradicted opinion of Mark F. Rottenberg, M.D., Mr. Allan's treating pain management specialist, who opined that Mr. Allan cannot perform the minimal demands of sedentary work." (Doc. 15 at 9-21.) Plaintiff further argues that one of the ALJ's reasons for rejecting Dr. Rottenberg's opinions, i.e., that his sworn statement was not subject to cross-examination, was in error. (*Id*. at 15-17.) Plaintiff also argues that the ALJ's pointing to inconsistencies in Dr. Rottenberg's opinions as a reason to not give deference to the opinion was improper because in so doing, the ALJ improperly "took on the role of medical expert." (*Id*. at 17-20.) In addition, Plaintiff contends that Dr. Rottenberg's opinion was uncontradicted and is thus entitled to deference. (*Id*. at 20-21.)

Plaintiff further asserts that substantial evidence does not support the ALJ's credibility determination, i.e., that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (*Id*. at 21-23.) Plaintiff also argues that the ALJ

16

improperly found that the Commissioner met its burden to establish that there is other work in the national economy that Plaintiff can perform. (*Id.* at 25.)

Finally, Plaintiff contends that the case should be remanded under the sixth sentence of 42 U.S.C. § 405(g) to consider the new evidence that was submitted to the Appeals Council. (*Id.* at 25-30.)

### a.       Weight given to treating source opinions

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A]

failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note at the outset that Dr. Rottenberg's conclusion that Plaintiff is disabled (Tr. at 325, 326-27) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ's decision to not give controlling weight to Dr. Rottenberg's underlying opinions was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

18

The ALJ described several inconsistencies between Dr. Rottenberg's testimony and the medical evidence, including the fact that "Dr. Rottenberg testified to the claimant having rather significant hip and knee arthritis[;] [h]owever, the record contains no corresponding diagnostic testing, nor did the claimant report such to [his doctors]. . . [and] [i]n fact, the claimant has not made any such allegations himself." (Tr. at 16.) The ALJ found that "[t]his detracts greatly from any weight to be ascribed to the doctor's opinion and statements." (Tr. at 16-17.) The Court agrees. In addition, although Dr. Rottenberg spoke of lumbar or canal stenosis throughout the spine above where Plaintiff had surgery at L4-5 (Tr. at 300), the most recent MRI results from May 2008 showed "mild central canal narrowing at L3-L4 and L2-L3 without limiting central canal stenosis at any level." (Tr. at 350.) Dr. Rottenberg correctly noted that the only normal EMG study was the first one performed on Plaintiff in 2006. (Tr. at 302.) However, I suggest that his statement that "all of th[e] somatosensory evoked potential testing in the lower extremities have been abnormal" (Tr. at 302), was less than precise and bordered on an inaccurate summary. According to Dr. Ahmad, whose two studies were performed in March 2007 and January 2008, the "findings suggest acute on chronic right L5 radiculopathy," but the findings were otherwise normal. (Tr. at 278, 284.) I therefore suggest that the ALJ properly gave Dr. Rottenberg's opinion "moderate weight" rather than controlling weight. (Tr. at 17.)

I further suggest that Plaintiff's additional arguments relating to Dr. Rottenberg lack merit. First, as to Plaintiff's argument that the ALJ improperly pointed out inconsistencies in Dr. Rottenberg's opinion, I suggest that it is not improper for an ALJ to point out inconsistencies in the treating physician's opinions because that is one of the express factors the ALJ is to consider when evaluating the amount of deference due a treating physician. 20 C.F.R. § 404.1527(d)(4);

*Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). In addition, an ALJ is also called to consider other factors "which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(6).

As to Plaintiff's argument that the ALJ improperly found the lack of cross-examination to be a factor in the decision to decline giving deference to Dr. Rottenberg's opinions (Doc. 15 at 15-20), I suggest that the presence or absence of cross-examination is one of those other factors that may be considered in the ALJ's decision to credit or reject a medical opinion. *Torres v. Sec'y of Health and Human Servs,* 870 F.2d 742, 744 (1st Cir. 1989) (affirming ALJ's reliance on non-examining medical advisor where the advisor testified and was subject to cross-examination and other factors supported reliance); *Perez v. Astrue*, No. EDCV 10-198-OP, 2010 WL 4027660, at *5 (C.D. Cal. Oct. 12, 2010) ("An ALJ may properly credit the testimony of a non-examining medical expert who is subject to cross-examination at the hearing.")

### b.   Subjective complaints of pain and substantial evidence

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff

uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding his level of pain was not fully credible. The ALJ noted that although the medical evidence showed a limiting condition, the "record does not support total inability." (Tr. at 15.) The ALJ noted, and I also note, that although Dr. Rottenberg indicated that the steroid injections had provided pain relief to Plaintiff for between three and six months (Tr. at 319-20), at the hearing Plaintiff testified that the injections work "[m]aybe 20 percent" of the time and that, when they work, they only work for "[m]aybe a week at the most." (Tr. at 15, 52.) I further note that the RFC assessment found Plaintiff to be "partially credible" as well. (Tr. at 259.) I therefore suggest that the ALJ's decision to discount Plaintiff's subjective complaints of pain was supported by substantial evidence.

I further suggest that the ALJ's findings follow the opinions of the vocational expert, which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and with

Plaintiff's own statements that he has no problem caring for his hair, shaving, or feeding himself, is able to prepare his own meals daily, do dishes, drive a car, ride in a car, go outside twice a day, handle his own finances, read, watch television, visit with others, stand for 1-1 ½ hours, walk short distances, and sit for 1 hour at a time. (Tr. at 126-30.)

### c.   Sentence six remand

The Supreme Court only recognizes two kinds of remands involving social security cases: those pursuant to sentence four and those pursuant to sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991); *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). The Supreme Court concluded that Congress's explicit delineation in § 405(g) regarding circumstances under which remands are authorized clearly showed that Congress intended to limit the district court's authority to enter remand orders in these two types of cases. *Melkonyan*, 501 U.S. at 100. Sentence four allows a district court to remand in conjunction with a judgment affirming, modifying or reversing the Commissioner's decision. *Id*. at 99-100. Sentence six allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Id*. at 100.

The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). In addition, "such evidence is 'material' only if there is a

reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

In the instant case, Plaintiff would like to remand for consideration of the evidence he presented to the Appeals Council. (Doc. 15 at 25-30; Tr. at 232-352.) Plaintiff contends that this evidence will support his claims regarding hip and knee pain, will provide MRI evidence from 2005 through 2008, and further support Dr. Rottenberg's sworn statement. (*Id*. at 25-28.)  Plaintiff asserts that he has "good cause" for failing to submit this evidence before the administrative hearing because "there is no way of knowing in advance of the hearing that the ALJ would not accord controlling weight to Dr. Rottenberg's opinion [so] this was the first opportunity Mr. Allan had to comment on the ALJ's findings." (*Id*. at 30.)

I suggest that Plaintiff's purported reason falls far short of good cause. "'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new"). Furthermore, as was the case in *Bass*, Plaintiff "has not detailed any obstacles that prevented him from entering this evidence, all of which predates the hearing before the ALJ . . . ." *Bass*, 499 F.3d at 513. "The good cause standard focuses on the actions taken by the party seeking to add evidence to the record. It is not satisfied by conclusory statements that the ALJ violated social security regulations." *Shears v. Comm'r of Soc. Sec.*, No. 1:09-cv-1011, 2010 WL 3385518, at *5 (W.D. Mich. Aug. 2, 2010). I therefore recommend that Plaintiff has not met his burden to justify a Sentence Six remand.

### 3.      Conclusion

Had I been required to decide this case in the first instance, I might have been inclined to hold for the Plaintiff. Congress, however, has seen fit to confer that function solely upon the Commissioner, subject only to the substantial evidence rule, and reviewing courts are without the authority to exercise appellate interference. For all these reasons, therefore, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

                                        CHARLES E. BINDER
Dated: March 17, 2011                   United States Magistrate Judge


**CERTIFICATION**

   I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  March 17, 2011              By____s/Patricia T. Morris_____
                                        Law Clerk to Magistrate Judge Binder