UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN T. ALLAN,

       Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

Civil Action No.
10-CV-11651

HON. MARK A. GOLDSMITH

**OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and REMANDING FOR FURTHER CONSIDERATION**

## I.  INTRODUCTION

This is a social security case.  Plaintiff Kevin Allen appeals from the final determination of the Commissioner of Social Security that he is not disabled and therefore not entitled to disability insurance benefits.  The matter was referred to Magistrate Judge Charles E. Binder for all pretrial proceedings.  The parties have filed cross motions for summary judgment.  Magistrate Judge Binder issued a report and recommendation ("R&R"), recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied.  Plaintiff has filed objections to the R&R; the Commissioner has filed a response.  The Court reviews de novo those portions of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  For the reasons that follow, the Court will reject the R&R, grant Plaintiff's motion for summary judgment, deny the Commissioner's motion for summary judgment, and remand the matter for further consideration.

1

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. The Administrative Law Judge ("ALJ") denied Plaintiff's claim for disability insurance benefits on a finding that he retained the residual functional capacity to perform a limited range of light work. Although writing in his R&R that he might have been inclined to rule in Plaintiff's favor had he been charged with deciding the case in the first instance, R&R at 24, the Magistrate Judge ultimately determined that substantial evidence supported the ALJ's conclusion that Plaintiff is not disabled.

In finding Plaintiff not disabled, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not fully credible, and that the medical opinions of Plaintiff's treating physician, Dr. Mark F. Rottenberg, M.D., are not entitled to controlling, or even great, weight. After thorough review of the entire record, the Court rejects both conclusions, finding them to be unsupported by substantial evidence, and remands the matter for further consideration pursuant to 42 U.S.C. § 405(g), sentence four.[1]

## II. ANALYSIS

The Court first addresses the ALJ's decision to discredit Plaintiff's testimony regarding the limiting effects of his condition. The Court then addresses the ALJ's decision to discount the medical opinions of Plaintiff's treating physician, Dr. Rottenberg.

### A. Plaintiff's Credibility

While the subjective complaints of a claimant can support a claim for disability if there is also objective medical evidence of an underlying medical condition in the record, an ALJ is not

---

[1] The fourth sentence of 42 U.S.C. § 405(g) authorizes the district court to affirm, reverse, or modify the Secretary's final decision.

required to accept subjective complaints and may properly consider the credibility of a claimant when making a disability determination. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 475-476 (6th Cir. 2003). However, an ALJ who rejects a claimant's testimony must "clearly state" the reasoning for doing so. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). An ALJ may discount credibility to a certain degree on a finding that the medical reports, claimant's testimony, and other evidence contain contradictions. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's impairment could reasonably be expected to cause the symptoms alleged, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not fully credible. The ALJ gave three reasons for discounting Plaintiff's credibility. First, the ALJ discounted Plaintiff's credibility because, according to her, Plaintiff's MRI and EMG studies do not reflect a worsening of his condition over time, as alleged:

> A September 21, 2005 lumbar MRI identified multilevel degenerative disc disease with moderate disc protrusions and stenosis, most notable at L4-5 although no stenosis was noted at that level. A May 29, 2008 lumbar MRI also identified multilevel mild to moderate degenerative disc disease, but noted no limited stenosis . . . . The claimant has undergone numerous EMG testings since April 2006. The first was normal, and subsequent ones have varied in intensity. For example, in January 2008, the finding was acute chronic L5 radiculopathy, while in March 2008 it was mild radiculopathy. This does not lend greatly to the credibility of the claim's allegations and suggests lesser effect than alleged.

Admin. R. ("AR") 15. The Commissioner admits that the ALJ erroneously analyzed Plaintiff's diagnostic studies. See Def. Mot. for Summ. J. at 13 ("the ALJ appears to have mistaken a March 2008 somatosensory evoked potential study, showing a mild abnormality (Tr. 372), for an EMG study"); id. at 18 ("the ALJ's decision contained errors regarding Plaintiff's diagnostic studies"). Because the ALJ's assessment of Plaintiff's diagnostic studies is indisputably flawed,

the assessment does not serve as substantial evidence supporting an adverse credibility finding. On remand, if the ALJ continues to cite perceived inconsistencies in Plaintiff's diagnostic testing results as a basis to discount his testimony, the ALJ shall explain precisely which objective medical evidence does not support a finding that Plaintiff's condition deteriorated over time, as alleged, and why any specific changes in Plaintiff's condition, as reflected by the diagnostic study results, are inconsistent with the allegation that his condition worsened over time.

Second, the ALJ discounted Plaintiff's credibility because she found a discrepancy in the testimony of Plaintiff, on the one hand, and Dr. Rottenberg's notes and testimony, on the other hand, relating to the effectiveness of the numerous steroid injections given to Plaintiff over the course of his treatment. In particular, Plaintiff testified that the injections provided pain relief for a week, at most, AR 52, while Dr. Rottenberg testified that the injections provided "up to maybe six months of relief." AR 319. In his objections, Plaintiff does not dispute this discrepancy. As such, he has waived any argument that the discrepancy perceived by the ALJ does not support an adverse credibility finding. See Thomas v. Arn, 474 U.S. 140, 155 (1985).

Finally, the ALJ discounted Plaintiff's credibility based on his reported daily activities; namely, transporting his son to and from school, preparing meals, performing light household chores, reading, watching television, managing his finances, and maintaining social interaction. The ALJ implies that a person in the amount of pain alleged by Plaintiff could not perform these activities. AR 16. However, as Plaintiff points out in his objections – and the Court agrees – the ALJ does not explain how or why Plaintiff's ability to perform the listed activities in any way contradicts his allegations of pain. The Court finds that an explanation is necessary because the inconsistency is not apparent from the record, especially in light of the following facts regarding Plaintiff's actual testimony: (a) the drive to/from the school of Plaintiff's son is a mere three

miles, (b) the meal preparation to which the ALJ refers – which consists of merely preparing sandwiches or frozen meals – takes only five to ten minutes, (c) the light household chores undertaken by Plaintiff consist of 10-15 minutes of washing dishes, and (d) the social interaction to which the ALJ refers consists of family members visiting Plaintiff at his house.  AR 125-132. Even the Commissioner concedes that Plaintiff's daily activities were "certainly limited."  Def. Mot. for Summ. J. at 18.  In the Court's judgment, Plaintiff's ability to perform the limited, brief activities described – all of which involve no prolonged movement and little to no exertion of energy – simply does not undercut the truthfulness of Plaintiff's allegations of pain.  If the ALJ concluded or concludes otherwise, her reasoning should have been – and on remand, shall be – included in her decision.  See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (remand particularly appropriate where further explanation will clarify rationale for ALJ's decision).

In sum, only one of the three reasons given by the ALJ for discounting Plaintiff's credibility is supported by substantial evidence.  Because the other two are not, the Court remands this matter for further consideration.  See Ford v. Astrue, 518 F.3d 979, 982-983 (8th Cir. 2008) (where ALJ's reasoning underlying decision to discount claimant's credibility is partially, albeit not fully, flawed, remand is appropriate).

### B.  Dr. Rottenberg's Opinions

The medical opinions of treating physicians are given controlling weight provided they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not accorded controlling weight, "the ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). However, even if the treating physician's opinion is not accorded controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." Rogers, 486 F.3d at 242. See also Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). In determining how much weight to give to a treating source's opinion, a host of factors are considered. Those factors are: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. 20 C.F.R. § 404.1527(d). Notably, the text of § 404.1527(d) expressly requires the ALJ to consider all of the above-listed factors: "Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the . . . factors in deciding the weight we give to any medical opinion." Id. (emphasis added).

      The ALJ did not accord the medical opinions of Plaintiff's treating physician, Dr. Rottenberg, "controlling weight," nor did she accord his opinions "great deference." Instead, the ALJ accorded only "moderate weight" to Dr. Rottenberg's opinions, in light of perceived "deficits" in his medical opinions. AR 17. Before discussing the deficits perceived by the ALJ, the Court notes that Plaintiff has frequently and continuously treated with Dr. Rottenberg on a monthly or bimonthly basis for over two years, from March 2006 to May 2008. AR 295 (deposition of Dr. Rottenberg). Over this course of time, Dr. Rottenberg examined Plaintiff on over 20 occasions. Id. In addition, Dr. Rottenberg is board certified in physical and

rehabilitation medicine, AR 294, 347, and is thus a specialist in the area of medicine to which Plaintiff's condition relates. Other than quickly noting, with no discussion, that Dr. Rottenberg is "an appropriate specialist with a sufficient treating relationship," AR 17, the ALJ fails to discuss any of this when evaluating the weight to be given to Dr. Rottenberg's medical opinion. The nature of the physician-patient relationship – as illustrated by the length of the relationship and frequency of office visits – and the physician's specialization, are important considerations. These considerations militate strongly in favor of according Dr. Rottenberg's opinion more rather than less deference.[2] The ALJ was not free to virtually ignore these favorable considerations in her analysis. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2007) ("If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." (emphasis added)).

That being said, the ALJ did consider, as required under § 404.1527(d), the supportability of Dr. Rottenberg's opinions along with whether his opinions are consistent with the record as a

---

[2] There are good reasons why these considerations are important. According to the Secretary's own regulations, opinions of treating sources are generally accorded more weight because such sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). Moreover, length of the treatment relationship and the frequency of examination are important factors to consider because longer relationships and more frequent office visits translate into more knowledge about the patient's condition, allowing the physician to obtain "longitudinal picture of [the patient's] impairment." Id. Also, for obvious reasons, the Secretary "give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Id. § 404.1527(d)(5).

whole. The ALJ concluded that less weight should be accorded to Dr. Rottenberg's medical opinions because he was not cross-examined at his deposition:

> In May 2008, claimant's representative conducted a one sided deposition of Dr. Rottenberg. In other words, there was no cross examination of the doctor's testimony, and thus the weight to be accorded it is reduced at the outset.

AR 16. In addition, the ALJ accorded Dr. Rottenberg's opinions less weight because, citing several purported contradictions between statements made by Dr. Rottenberg and the evidence contained in the record, she determined that his "findings are not fully consistent with other, more objective, examinations." AR 15-17.

The ALJ's decision to discount Dr. Rottenberg's opinions on the ground that he was not cross-examined during his deposition is erroneous as a matter of law, illogical, and somewhat puzzling. As the ALJ knows, social security proceedings at the administrative level are inquisitorial, and not adversarial, proceedings. See 20 CFR § 404.900(b) ("[i]n making a determination or decision . . . the administrative review process [is conducted] in an informal, nonadversary manner"). As the United States Supreme Court has written:

> A . . . report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, . . . may constitute substantial evidence.

Richardson v. Perales, 402 U.S. 389, 402 (1971) (emphasis added). Dr. Rottenberg's deposition in this case, in effect, is akin to a report – only sworn under penalty of perjury – providing further details about Plaintiff's medical condition; it serves the same function as the rest of the medical documentation contained in the record, and is not to be accorded reduced weight due to the absence of cross-examination.[3] If anything, the deposition testimony should be accorded

---

[3] The Court also notes, as has the Supreme Court, that it is the ALJ's duty to investigate the facts

more weight than ordinary medical documents because it was given under oath. Even the Commissioner admits that the ALJ erred in according Dr. Rottenberg's opinion less weight based on the absence of cross-examination. See Def. Mot. for Summ. J. at 12 ("Not all of the ALJ's reasons for discounting Dr. Rottenberg's opinion are well-founded, specifically the ALJ's finding that the opinion was of diminished value because it was not subject to cross-examination"). Remand is necessary so that Dr. Rottenberg's opinions can be properly considered without reduced weight "at the outset." In fact, remand is required based on this erroneous application of the law alone, even without considering the other problems with the ALJ's decision, discussed above and below. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) (a court may not affirm ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the ALJ's decision is supported by substantial evidence).

In addition to the legal deficiency involving the cross-examination matter, an error that alone merits remand, the ALJ made several factual errors in concluding that Dr. Rottenberg's findings are inconsistent with the objective medical testing. By way of example:

- The ALJ found that Dr. Rottenberg failed to take note of "rather benign . . . clinical and diagnostic testing" in explaining why Dr. Rick Olson, the doctor who referred Plaintiff to Dr. Rottenberg, declined to recommend surgery. AR 15. However, the record does not reflect that Dr. Olson declined to recommend surgery as a result of "benign" test results. Rather, according to Dr. Olson's exam notes, Plaintiff's MRI revealed degenerative changes, but surgery was not recommended because, in Dr. Olson's opinion, it would

---

in social security matters, and the Commissioner has no representative before the ALJ to oppose the claimant's benefits claim. See Sims v. Apfel, 530 U.S. 103, 110-111 (2000) (plurality opinion). Because no party opposes a social security claimant at the administrative level, it is not even clear who the ALJ expected should have cross-examined Dr. Rottenberg. Ironically, if the ALJ deemed Dr. Rottenberg's opinions to be flimsy as a result of their having been untested by an adversary, it was the ALJ's responsibility as the developer of facts to take appropriate action. By affording reduced weight to the doctor's opinion based on the absence of cross-examination, the ALJ has unfairly penalized Plaintiff for the ALJ's apparent failure to develop the facts relative to this issue.

9

"not help." AR 235. Instead of surgery, Dr. Olson referred Plaintiff to Dr. Rottenberg, a pain management and rehabilitation specialist, a referral he probably would not have made if Plaintiff was healthy and pain-free. Thus, Dr. Rottenberg's failure to take account of "benign . . . clinical and diagnostic findings" is not surprising, as such findings were not benign, and it is by no means clear from the record that Dr. Olson declined to recommend surgery for that reason.[4]

- The ALJ faulted Dr. Rottenberg because he claimed that multiple EMG test results depicted a deterioration in Plaintiff's condition when, according to the ALJ, this conclusion is not reflected in the medical reports. Contrary to the ALJ's findings, the EMG results, along with the other record evidence, do indeed reflect a deterioration of Plaintiff's condition with the passage of time. The first EMG – conducted in April 2006 – was normal, as Dr. Rottenberg acknowledged in his deposition. AR 302. The subsequent two EMGs – conducted in March 2007 and January 2008 – were abnormal; the March 2007 EMG suggested "bilateral S1 radiculopathies and right L5 radiculopathy" while the January 2008 EMG suggested "acute [or] chronic right L5 radiculopathy." AR 283-284; 277-278. The ALJ does not explain why Dr. Rottenberg was wrong to say that the EMGs reflect a deterioration in Plaintiff's condition. As such, this criticism does not support the ALJ's finding that Dr. Rottenberg's opinion is inconsistent with the medical records.

- The ALJ discredited Dr. Rottenberg's testimony because he stated that a newly conducted MRI would reveal a significant deterioration in Plaintiff's lumbar pathology when, according to the ALJ, "the only significant change [from the 2005 MRI to the 2008 MRI] . . . was slight encroachment on the L2 nerve root." AR 16. Upon review, the Court finds the ALJ's conclusion to be grossly inaccurate and without evidentiary support. A review of the 2005 MRI results, found at AR 237-238, and 2008 MRI results, found at AR 348-350, reflects a significant worsening of Plaintiff's condition from the time of the 2005 MRI study to the time of the 2008 MRI study. Notably, the Commissioner admits in its brief that the ALJ's analysis with regard to Plaintiff's MRI studies is flawed. See Def. Mot. Summ. J. at 12-13 ("Not all of the ALJ's reasons for discounting Dr. Rottenberg's opinion are well-founded, specifically the ALJ's finding that . . . there was no significant difference in the MRI studies."). The ALJ's erroneous conclusion regarding Plaintiff's MRI studies does not support her decision to discredit Dr. Rottenberg's opinion.

- The ALJ discounted Dr. Rottenberg's opinion because he stated that Plaintiff has always had decreased sensation in an L5-S1 dermatome, "yet such is not noted by any other

---

[4] In any event, even if Dr. Rottenberg misinterpreted or inaccurately speculated about the reasoning behind a medical decision made by another physician – a conclusion that is not supported by the record – the Court has substantial doubt as to whether this can fairly be used as a factor in discrediting Dr. Rottenberg's own opinions, which are based on his own numerous and frequent examinations of Plaintiff.

physician and such is difficult to decipher in his treatment notes." AR 16. Plaintiff contends that the ALJ neglected to consider the results of sematosensory evoked potential testing, which, according to Plaintiff, directly support Dr. Rottenberg's statement that Plaintiff has decreased sensation in the L5-S1 dermatome. The record reflects that Plaintiff received sematosensory evoked potential tests in April 2006, December 2006, and June 2008. AR 247, 289, 274. Yet, this testing was not mentioned by the ALJ in her decision. Thus, it is not clear whether the ALJ was even aware of the tests. On remand, the ALJ is instructed to review the results of the sematosensory evoked potential tests and determine whether they support Dr. Rottenberg's opinion that Plaintiff has decreased sensation in an L5-S1 dermatome.

The above discussion illustrates that many of the reasons given by the ALJ in support of her decision to discount Dr. Rottenberg's medical opinions are not supported by substantial evidence. Accordingly, the matter must be remanded.

**C. The Court Remands for Further Consideration as Opposed to for an Award of Benefits**

The only remaining issue is whether this matter should be remanded for further consideration or for an award of benefits. Plaintiff requests the latter and, in the alternative, the former. In making this determination, the Sixth Circuit has instructed:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . . A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). The Court opts to remand for further consideration – and not for an immediate award of benefits – because, while proof of disability is certainly strong, the Court cannot conclude that the record contains no evidence to the contrary.

### III. CONCLUSION

The ALJ's decision denying Plaintiff's claim for disability insurance benefits contains significant factual and legal inaccuracies, a fact that the Commissioner all but admits. Under

11

these circumstances where the majority of the reasons given by the ALJ in support of her decision denying benefits are erroneous, the Court cannot conclude that the decision of the ALJ is supported by substantial evidence. The Magistrate Judge's R&R recommending a contrary result is rejected. The Commissioner's motion for summary judgment [docket entry 22] is denied; Plaintiff's motion for summary judgment [docket entry 15] is granted. The case is remanded for further consideration pursuant to 42 U.S.C. § 405(g), sentence four.[5]

SO ORDERED.


Dated: July 8, 2011                                s/Mark A. Goldsmith
       Flint, Michigan                             MARK A. GOLDSMITH
                                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 8, 2011.

                                                   s/Deborah J. Goltz
                                                   DEBORAH J. GOLTZ
                                                   Case Manager

---

[5] On remand, the ALJ is instructed to review the case on a complete record, including any new material evidence. See Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983).